UNITED STATES of America
v.
PASSODELIS, Christopher, Appellant.

No. 79–1486.

United States Court of Appeals,
Third Circuit.

Argued Sept. 5, 1979.

Decided Feb. 21, 1980.

Rehearing and Rehearing En Banc
Denied May 7, 1980.

Thomas R. Eddy, Eddy, Osterman & Lloyd, Pittsburgh, Pa., for appellant.

Samuel M. Forstein, Craig C. Donsanto, Public Integrity Section, Criminal Division, U.S. Dept. of Justice, Washington, D. C., for appellee.

Before ADAMS, HUNTER and HIGGIN-BOTHAM, Circuit Judges.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

This an appeal by Christopher Passodelis from a jury verdict finding him guilty of

making contributions to a candidate for federal office in excess of $1,000 in violation of 18 U.S.C. § 608(b)(1) (Supp. IV 1974) and of making a contribution in the name of another person in violation of 18 U.S.C. § 614 (Supp. IV 1974).[1] Passodelis advances six arguments for reversing his convictions: (1) section 608(b)(1)'s $1,000 limitation on contributions to individual candidates is unconstitutionally overbroad; (2) the absence of an explicit scienter requirement in section 608(b)(1) violates the First Amendment to the Constitution; (3) section 614's prohibition of contributions made in the name of another person is unconstitutionally overbroad; (4) section 614 is unconstitutionally vague; (5) the absence of an explicit scienter requirement in section 614 violates the First Amendment to the Constitution; (6) venue in the Middle District of Pennsylvania was improper.

We find that venue in the Middle District of Pennsylvania was improper in violation of both the Sixth Amendment to the Constitution and Rule 18 of the Federal Rules of Criminal Procedure and that, as a result, Passodelis's convictions must be overturned. Accordingly, we do not reach Passodelis's other contentions.

## I

Passodelis was an enthusiastic supporter of then Governor Shapp's campaign for the Democratic nomination for the presidency. In fact, his enthusiasm was so great that he successfully solicited $250 contributions from eighteen individuals for the Shapp for President Committee and then he himself repaid all eighteen individuals for their contributions. He was tried by a jury and convicted on one count of making contributions to a candidate for federal office in excess of $1,000 in violation of 18 U.S.C.

§ 608(b)(1) (Supp. IV 1974) and on eighteen counts of making a contribution in the name of another person in violation of 18 U.S.C. § 614 (Supp. IV 1974).[2]

In a pre-trial motion urging transfer of venue from the Middle to the Western District of Pennsylvania, Passodelis argued that venue in the Middle District was improper. In response to the motion to transfer, the government argued that venue in the Middle District was indeed proper since that was where the Shapp for President Committee had its headquarters and deposited the contributions which it received. Although the district court denied Passodelis's motion, the court stated that "[t]he United States must prove at trial, as it has alleged in the complaint, that crimes were committed by the Defendant in the Middle District of Pennsylvania." App. at 38a. Passodelis now argues before this court, as he argued in a post-trial motion before the district court, that the government failed to prove that crimes were committed by Passodelis in the Middle District.

## II

The question of where an accused shall stand trial was a matter of such importance to those who wrote the Constitution and the Bill of Rights that they dealt with it in two separate provisions. Article III, section 2, of the Constitution requires that "The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . . ." U.S. Const. art. III, § 2, cl. 3. In addition, the Sixth Amendment to the Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been

1. 18 U.S.C. §§ 608(b)(1) and 614 (Supp. IV 1974), Federal Election Campaign Act Amendments of 1974, Pub.L.No. 93–443, §§ 101(a) and 101(f)(1), 88 Stat. 1263, 1268, were repealed, Federal Election Campaign Act Amendments of 1976, Pub.L.No. 94–283, § 201(a), 90 Stat. 496 (1976 Amendments), and reenacted in amended form. Id. § 112, 90 Stat. 486, 494 (codified at 2 U.S.C. §§ 441a(a)(1)(A) and 441f (1976)). The repeal of §§ 608(b)(1) and 614 is, however,

subject to a savings provision which provides that the repealed sections "shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of any penalty, forfeiture, or liability." 1976 Amendments, *supra*, § 114, 90 Stat. 495.

2. See note 1 *supra*.

committed, which district shall have been previously ascertained by law . . . ." U.S. Const. amend. VI.[3]

■ The Supreme Court has, more than once, stated that "[q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure. They raise deep issues of public policy . . ." *United States v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944); *Travis v. United States*, 364 U.S. 631, 634, 81 S.Ct. 358, 360, 5 L.Ed.2d 340 (1961). *Accord, United States v. Valenti*, 207 F.2d 242, 245 (3d Cir. 1953). Although the Court has, over time, divided over whether the constitutional provisions on venue were designed primarily to insure that an accused not be forced to stand trial far from where· he resides, *United States v. Johnson, supra; United States v. Cores*, 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958), or whether the provisions were designed primarily to insure that an accused not be forced to stand trial far from where the crime was committed, *Johnston v. United States*, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956); *Travis v. United States, supra; Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), the Court has consistently viewed the venue provisions of the Constitution as important safeguards protecting an accused from unfairness and hardship in defending against prosecution by the federal government. Though our nation has changed in ways which it is difficult to imagine that the Framers of the Constitution could have foreseen, the rights of criminal defendants which they sought to protect in the venue provisions of the Constitution are neither outdated nor outmoded. Moreover, the Congress has incorporated the basic constitutional provisions on venue in Rule 18 of the Federal Rules of Criminal Procedure which provides, in relevant part, that "the prosecution shall be had in a district in which the offense was committed." Fed.R. Crim.P. 18.

### III

Since the determination of whether venue was proper depends on where the crimes were committed, we must, as an initial matter, ascertain the definitions of the crimes. In a recent opinion, this court held that the act of making a contribution in the name of another person, which is prohibited by section 614, is complete either on the date such a contribution is mailed to or received by, but before it is deposited by, the recipient. *United States v. Hankin*, 607 F.2d 611 (3d Cir. 1979). Since the primary operative element of the act prohibited by section 608(b)(1) is, like that of the act prohibited by section 614, the *making* of a contribution, the rationale underlying the *Hankin* court's definition of the making of a contribution for purposes of section 614 requires that the same definition of the making of a contribution be utilized for purposes of section 608(b)(1). Accordingly, in regard to both sections 608(b)(1) and 614, we are bound by the holding in *Hankin* that the illegal making of a contribution is complete before the contribution is deposited by the recipient.

■ We turn now to examine whether there is sufficient evidence upon which the district court could have found that crimes were committed by Passodelis in the Middle District.[4] Since, under *Hankin*, the fact that the contributions were deposited in the Middle District by the Shapp for President Committee is insufficient to establish venue

---

**3.** Literally, the provision in Article III is a venue provision since it specifies the place of trial, whereas the provision in the Sixth Amendment is a vicinage provision since it specifies the place from which the jurors are to be selected. This distinction, however, has never been given any weight, perhaps because it is unlikely that jurors from one district would be asked to serve at a trial in another district, or perhaps, more importantly, because the requirement that the jury be chosen from the state and district where the crime was committed presupposes that the jury will sit where it is chosen.

**4.** We need not decide today whether, as Passodelis contends, venue must be proved beyond a reasonable doubt or whether proof by a preponderance of the evidence is sufficient since, under either standard, we find that the government has not met its burden.

in the Middle District, we must determine whether there is evidence in the record which will support a finding that acts which constitute elements of the crimes were committed by Passodelis in the Middle District. Passodelis contends, properly we believe, that "[t]he only testimony in the case concerning the transmittal of the checks by the defendant to the Shapp for President Committee in Harrisburg, Pennsylvania [the Middle District] came from Patrick Kelly, an FBI agent who had interviewed the defendant prior to trial and who testified to admissions made by the defendant to him." Brief for Appellant at 22. When questioned as to what Passodelis told him that he did with the checks after collecting them, Kelly replied:

> He couldn't recall specifically. He advised us that upon return to Pittsburgh [the Western District] he either personally hand carried the checks to Harrisburg, Pennsylvania, [the Middle District] or provided them to Mr. Seymore Heyison for transmittal to the Shapp for President Committee here in Harrisburg. But he could not remember exactly what he did with the checks.

App. at 58a, Record at 28.

Although Heyison, to whom Passodelis *may* have given the checks in the Western District, is never clearly identified, it appears from the record that he was either part of the Shapp for President Committee or was connected with Shapp in some other capacity. *See, e. g.,* Record at 21–22, 32–33. Only if Heyison was Passodelis's agent could any act of Heyison's in the Middle District be attributed to Passodelis. However, there are no facts in the record which will support the conclusion that Heyison was an agent of Passodelis's. In fact, if anything, it would appear that if Heyison received the checks in the Western District from Passodelis, he did so in his capacity as an agent of the Shapp for President Committee. Accordingly, if Heyison received the checks in the Western District, the crimes were complete in the Western District. *See United States v. Hankin, supra.*[5]

■ Since it is unclear whether Passodelis or Heyison brought the checks into the Middle District where they were deposited in the account of the Shapp for President Committee, and since we have no facts upon which we are able to determine that Heyison was acting as Passodelis's agent, we are forced to conclude that the government has not met its burden of establishing that venue in the Middle District was proper.[6]

---

5. Interestingly, in its closing argument to the jury, the government appears to concede that Passodelis did not bring the checks to Harrisburg. Record at 295.

6. The dissent is certainly correct in characterizing the central issue in dispute in this case as a factual one. However, we are concerned that the dissent misapprehends the nature of our inquiry. The dissent asserts that we substitute our own "verdict of acquittal." However, we are not reviewing whether there was sufficient evidence upon which a jury could have found Passodelis guilty, but rather whether there was sufficient evidence upon which the district court could have found that crimes were committed by Passodelis in the Middle District. In fact, it is completely unnecessary for us to call into question any of the jury's findings since there is no factual inconsistency between the jury having found that Passodelis committed the crimes for which he was convicted and our determination that the evidence was insufficient to support a finding that crimes were committed by Passodelis in the Middle District. The two inquiries are, on the facts of this case, entirely separate. The dissent also asserts that we "substitute findings we would have made had we been the factfinding tribunal." However, the determination as to whether there was sufficient evidence to support a finding that crimes were committed by Passodelis in the Middle District is a question of law, not of fact.

The dissent would have us conclude that if Heyison received checks in the Western District from Passodelis, he did so in his capacity as an agent of Passodelis's and that, accordingly, Heyison's acts in the Middle District should be attributed to Passodelis. However, as we have pointed out, there are simply no facts in the record which will support the conclusion that Heyison was an agent of Passodelis's. Moreover, even were we, as the dissent argues, to view the particular words in which Kelly recounts what Passodelis told him he did with the checks as probative on the issue of agency, there is no indication whatsoever that Heyison was in any respect subject to Passodelis's control. *See Restatement (Second) of Agency* § 1 (1957). Accordingly, we have no choice but to

## IV

Reluctant as we are to overturn otherwise valid convictions, the Sixth Amendment to the Constitution and Rule 18 of the Federal Rules of Criminal Procedure leave us no choice. The judgment of the district court will be reversed.

ADAMS, Circuit Judge, dissenting.

The majority's discussion regarding the constitutional aspects of venue obscures the wholly factual nature of the primary issue in dispute, namely is there sufficient evidence in the record, taking the view most favorable to the prosecution, to support a finding that venue was properly established?

Except where venue or proof of venue has been waived, the government bears the burden of proving that criminal activity took place in the district where the prosecution is undertaken.[1] It is well-settled, however, that venue need not be established beyond a reasonable doubt but may be proved by a preponderance of the evidence.[2] Moreover, the absence of direct proof of venue will not defeat a conviction when circumstantial evidence affords a reasonable inference that the criminal activity occurred at the place alleged.[3] "If upon the whole evidence it may be inferred that the crime was committed where the venue was laid, that is sufficient."[4]

In reviewing a verdict of guilty, an appellate court's function is carefully circumscribed. Our responsibility is not to substitute findings we would have made had we been the fact-finding tribunal, but rather to determine simply whether the finding in

question is supported by the evidence considered as a whole, "taking the view most favorable to the government."[5] Accordingly, our task in this appeal is to ascertain whether evidence in the record, when viewed in the light most favorable to the government, supports the inference that Passodelis engaged in criminal activity in the Middle District of Pennsylvania.

The majority recognizes the presence of evidence that Passodelis himself admitted to the F.B.I. that "he *either* personally hand carried the checks to Harrisburg, Pennsylvania [in the Middle District], *or* provided them *to Mr. Seymore Heyison for transmittal to* the Shapp for President Committee . . . in Harrisburg."[6] It is likewise undisputed that these checks, payable to the Shapp for President Committee, were in fact delivered in Harrisburg and duly processed there. If Passodelis personally carried the checks to Harrisburg, venue in the Middle District obviously was proper. Even if Passodelis provided the checks to Heyison "for transmittal to the Shapp for President Committee" in Harrisburg, however, Heyison's actions, if done in Passodelis's behalf, would fairly be attributable to Passodelis. In either case, then, venue would have been proper in the Middle District.

The majority apparently concedes that if Heyison was acting in Passodelis's behalf, the acts of Heyison in the Middle District would be attributable to Passodelis. The majority nevertheless reverses the judgment of the district court, effectively directing in its place a verdict of acquittal, on the ground that "there are *no* facts in the

---

hold that the evidence was insufficient to support a finding that crimes were committed by Passodelis in the Middle District.

1. Fed.Rule Crim.P. 18.

2. *E. g., United States v. Panebianco*, 543 F.2d 447 (2d Cir. 1976); *United States v. Lisowiski*, 504 F.2d 1268 (7th Cir. 1974); *United States v. Haley*, 500 F.2d 302 (8th Cir. 1974); *United States v. Powell*, 498 F.2d 890 (9th Cir. 1974); *United States v. Luton*, 486 F.2d 1021 (5th Cir. 1973).

3. *E. g., United States v. Powell*, 498 F.2d 890 (9th Cir. 1974); *United States v. Luton*, 486

F.2d 1021 (5th Cir. 1974); *United States v. Aldridge*, 484 F.2d 655 (7th Cir. 1973).

4. *Weaver v. United States*, 298 F.2d 496, 498 (5th Cir. 1962).

5. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Shoup*, 608 F.2d 950, 955 (3rd Cir. 1979); *United States v. Bycer*, 593 F.2d 549, 551 (3d Cir. 1979).

6. Emphasis added.

record which will support the conclusion that Heyison was an agent of Passodelis's."[7] But Passodelis admitted, as the majority itself recognizes, that if he did not personally carry the checks to Harrisburg, he provided them to Heyison "for transmittal to the Shapp for President Committee in Harrisburg." I, for one, am unable to understand how the majority can deny that, taking the view most favorable to the government, this admission does not at least afford the inference that if Heyison rather than Passodelis delivered the checks to Harrisburg, he did so with Passodelis's consent and on behalf of Passodelis.[8] Indeed, if the majority is right, the uncertainty as to whether Passodelis or Heyison brought the checks to Harrisburg might render venue improper in either the Middle. District or the Western District of Pennsylvania.

Because I believe that there is adequate evidence in the record to support a finding that venue was properly established in the Middle District, I dissent.[9]

---

7. Emphasis added.

The majority contends that "[i]n fact, if anything, it would appear that if Heyison received the checks in the Western District from Passodelis, he did so in his capacity *as an agent* of the Shapp for President Committee." (emphasis added). The only evidence in the record regarding Heyison's connection with the Shapp for President Committee, however, is that Heyison invited Passodelis to attend a political function at the Governor's mansion and asked Passodelis if the latter would be interested in having the Governor attend a cocktail party at Passodelis's home. Record at 21–22, 32–33.

8. Passodelis offered no points for charge to the jury. Of the instructions proposed by the Government, No. 19, "Agent of the Accused," expressly stated:

It is not necessary to prove that the accused personally did every act constituting the offense charged.

As a general rule, whatever any person is legally capable of doing himself, he can do through another as his agent. So, if the acts or conduct of an employee or other agent are willfully ordered or directed, or willfully authorized or consented to by the accused, then the law holds the accused responsible for such acts or conduct the same as if personally done by the accused.

(citing Federal Jury Practice and Instructions § 12.07 (3d ed. 1977)).

9. Of course, if the campaign contributions could not have been "made" before they were "accepted" by the Shapp for President Committee or "deposited" by the Committee, or both, then there would be no question here that venue was proper in the Middle District. Although this Court in *United States v. Hankin*, 607 F.2d 611 (3d Cir. 1979), recently held that a campaign contribution is "made" before it is "accepted," candor requires one to note that I remain troubled by that decision.

Inasmuch as the majority has not addressed the other issues raised by Passodelis on appeal, it would serve no purpose for me to do so here, except to say that I believe they are without merit.