## Commonwealth v. Keenan

*LeRoy Zimmerman,* Attorney General, for the Commonwealth of Pennsylvania.

*Vincent Ziccardi,* for defendant James Nicholas.

*Julius E. Fioravanti,* for defendant John F. Keenan.

*Todd A. Hoover,* for defendant Wardell Deshields, Jr.

DOWLING, *J.,* December 3, 1984—In the City of Brotherly Love it apparently is rather common to obtain a current state automobile inspection sticker by other than the legitimate method of having your car inspected. Defendants were found guilty in connection with a scheme, which grossed hundreds of thousands of dollars a year, involving the distribution and sale of counterfeit stickers.

Defendants argue in their post-trial motions, however, that all their alleged criminal activity occurred in Philadelphia and, therefore, there was no

jurisdictional basis for their joint trial in Dauphin County. As stated in Commonwealth v. Creamer, 236 Pa.Super. 168, 172, 235 A.2d 214 (1975):

"It is well-established law in the Commonwealth that before a county assumes jurisdiction over a crime, some overt act must have occurred therein (Citations omitted). Where a conspiracy is alleged, an overt act committed in a county by any one of the conspirators is sufficient for that county to assert jurisdiction over all." (Citations omitted)

Such requirement has its roots in two provisions of the U.S. Constitution.

"Aware of the unfairness and hardship to which trial in an environment alien to the accused exposes him, the Framers wrote into the Constitution that 'The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed . . .' Article III, §2, cl. 3. As though to underscore the importance of this safeguard, it was reinforced by the provision of the Bill of Rights requiring trial 'by an impartial jury of the State and district wherein the crime, shall have been committed.' Sixth Amendment. U.S. v. Johnson, 323 U.S. 273, 275, 65 S.Ct. 249, 251, 89 L.Ed. 236 (1944). Similarly, the Pennsylvania Constitution provides, in Article I, Section 9, that "(i)n all criminal prosecutions the accused hath a right to . . . a speedy public trial by an impartial jury of the vicinage."

"Prior to the American Revolution, the colonists cherished principles of venue and vicinage to guard against transportation of criminal defendants out of the area to England or to some distant place for trial." Commonwealth v. Katasafanas, 318 Pa. Super. 143, 464 A.2d 1270, 1274 (1983). In U.S. v. Passodelis, 615 F.2d 975 (3rd Cir. 1980), the continued importance of the venue safeguards was reinforced.

"Though our nation has changed in ways which it is difficult to imagine that the Framers of the Constitution could have foreseen, the rights of criminal defendants which they sought to protect in the venue provisions of the Constitution are neither outdated nor outmoded." 615 F.2d at 977.

In the instant cases, the Commonwealth does not dispute the well established law on jurisdiction and venue. It acknowledges that no overt act occurred within Dauphin County and that at best only the effects of defendants' criminal activity was felt here, which is insufficient under Creamer, supra, to establish jurisdiction.[1] The Commonwealth, nonetheless, argues a novel theory of jurisdiction based on the Investigating Grand Jury Act, Act of October 5, 1980, P.L. 693, No. 142, 42 Pa. C.S. §4541 et seq. (the Act).[2] In particular, the prosecution relies on 42 Pa.C.S. §4551, which provides in relevant part:

"(c) Prosecution by Attorney General.—Whenever a multicounty investigating grand jury returns a presentment against any person the Attorney General or his designee shall, with respect to the alleged criminal activities, be authorized to prosecute the person on behalf of the Commonwealth by instituting criminal proceedings in the county of appropriate venue. The Attorney General or his designee shall take the oath of office required by law to be taken of district attorneys, and shall be clothed with all the powers and subject to all the liabilities imposed upon district attorneys by law.

---

1. We note that even if the "tracing" theory was applicable in Pennsylvania, it would not be available to the Commonwealth in these cases because no evidence of any effect in Dauphin County was introduced at trial.

2. The charges in these cases arose out of Presentments 11 and 17 of The January 25, 1982 Multi-County Investigating Grand Jury, convened in accordance with the act.

"(d) Venue.—In any case where a multicounty investigating grand jury returns a presentment the supervising judge shall select the county for conducting the trial from among those counties having jurisdiction."

It is the Commonwealth's contention that under Section 4551(d) the supervising judge could establish venue in Dauphin County without an overt act here to establish subject matter jurisdiction. In effect, the prosecution argues, the supervising judge could establish venue in any county within this Commonwealth since, under 42 Pa.C.S. §931, every court of common pleas has original jurisdiction for criminal cases. However, the prosecution has failed to cite any authority for such a theory, nor has our research disclosed any. We are forced to conclude that neither jurisdiction nor venue was proper for these cases in Dauphin County;[3] therefore we are granting new trials for each defendant.

It is true that 42 Pa.C.S. §931(a), in its broad grant of "unlimited original jurisdiction of all actions and proceedings," does vest courts of common pleas with jurisdiction to hear criminal matters.

---

3. We recognize the distinction between jurisdiction and venue; jurisdiction being the competency of a court to hear and determine controversies of the general nature of the matter involved, and venue being the right to have an action brought and heard in a particular judicial district. McGinley v. Scott, 401 Pa. 310, 164 A.2d 424 (1960). But we are further cognizant of the words of the Superior Court in Commonwealth v. Simeone, 222 Pa.Super. 376, 379, 294 A.2d 921, 922 (1972): "Although the cases present some confusion between the language of jurisdiction and that of venue, there is no doubt that the actuality of what our courts have done is to treat the place of the crime as determining which court has the power to try the offense."

However, jurisdiction in criminal cases has the further requirements of the occurrence of an overt act in the county. Creamer, supra. The broad grant of authority in section 931 is a far cry from clothing all common pleas courts with jurisdiction to try any criminal case, regardless of where the crime occurred.

The Commonwealth's theory also is inconsistent with the rules on statutory construction. Section 4551 of the act states that the supervising judge shall "select" the county of trial, but the Commonwealth's theory would convert "select" into "create." This would violate the rule that words and phrases are to be construed according to their common meaning and accepted usage. 1 Pa.C.S. §1903(a); Fireman's Fund Ins. Co. v. Nationwide Mutual Insurance Co., 317 Pa.Super. 497, 464 A.2d 431 (1983). Further, section 4551(d) of the act states that the county selected by the supervising judge shall be "from among those counties having jurisdiction." Clearly, the plain meaning of this phrase is that the county selected must already have jurisdiction; that is, not a county in which jurisdiction is created by the supervising judge.

In addition, statutes or parts of statutes are in pari materia when they relate to the same persons or things, and statutes in pari materia are to be construed together. 1 Pa.C.S. §1932; Black v. Billy Penn Corp., 72 Pa.Commw. 628, 457 A.2d 192 (1983). Since sections 4551(c) and (d) both relate to the institution of criminal proceedings after an investigating grand jury presentment, they are in pari materia. And when read together, it is clear from section 4551(c) that the county of trial selected pursuant to section 4551(d) must be a "county of appropriate venue." A county in which no overt act of

criminal activity occurred cannot be an appropriate county of venue.

Finally, it also is an accepted rule of construction that the legislature does not intend a result that is absurd. 1 Pa.C.S. §1922(1); Fireman's Fund Ins. Co., supra. Surely, if the General Assembly had intended via Section 4551(d) to abrogate all previously established rules on venue it would have so stated in clear language.

The Commonwealth further argues that the entire purpose of the act was to consolidate in one investigation and at one trial those criminal activities which are multi-county in nature. This we do not dispute. However, such purpose does not support the prosecution theory since a legislative intent to have one trial does not mean one trial in a county that does not have jurisdiction or venue. Instead, it means, as the acts states, "in the county of appropriate venue." 42 Pa.C.S. §4551(c).

Besides rejecting the Commonwealth's theory of jurisdiction based on the act, we are unable to find any other basis for jurisdiction or venue in Dauphin County. Two recent cases in which jurisdiction was found in Dauphin County based on a connection with the seat of state government here are of no help to the Commonwealth. In Commonwealth v. Ohle, 503 Pa. 566, 470 A.2d 61 (1983), jurisdiction anywhere in the Commonwealth was disputed, with defendants, two insurance brokers based in New York, contending that if there was any criminal activity it occurred in the Empire State. However, the brokers obtained insurance premiums from the Commonwealth in Dauphin County and, thus, an element of the crime of theft by failure to make required disposition of funds received occurred here. In the instant case there was no similar occurrence;

i.e., the counterfeit auto inspection stickers were not obtained, possessed or sold in Dauphin County.

In Commonwealth v. Katsafanas, supra, 318 Pa.Super. 143, 464 A.2d 1270 (1983), defendants were convicted in Dauphin County of rigging the Pennsylvania Lottery's Daily Numbers Game. While the actual lottery drawing which was "fixed" occurred in Pittsburgh, Allegheny County, the lottery's central computer, located in Harrisburg, was found essential to the operation of the lottery and thus to the crime. The court did not hold Dauphin County was the only county where venue could lie but did find venue proper here because of the location of the central computer. Unfortunately for the Commonwealth, there was no similar technological link to Dauphin County in the cases at bar.

We are, therefore, despite the clear evidence of defendants' guilt, constrained to grant them new trials because there was neither jurisdiction nor venue to try them in Dauphin County.[4] Because of our disposition on the question of jurisdiction and venue, we find it unnecessary to address the myriad of other issues alleged by defendant Keenan.

Accordingly, we enter the following

## ORDER

And now, this December 3, 1984, defendants' motions for new trial are granted.

---

4. We emphasize that we are not arresting judgment. We believe there would not be a valid double jeopardy issue at re-trial because the first prosecution was before a court which lacked jurisdiction. See 18 Pa.C.S. §112.