**UNITED STATES of America, Appellee,**

v.

**Robert Allen BAXTER, Appellant.**

**No. 89–1214.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
July 25, 1989.

Decided Sept. 7, 1989.

William J. Winning, Curran, Winning & Fioravanti, P.C., Media, Pa., for appellant.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, and Lee J. Dobkin, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, and HUTCHINSON, Circuit Judge, and WOLIN, District Judge.*

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

Robert Allen Baxter (Baxter) appeals his conviction on five counts of receiving an illegal gratuity while a public official in violation of 18 U.S.C.A. § 201(g) (West 1969).[1] The case was tried before a jury in the United States District Court for the Eastern District of Pennsylvania. Baxter claims that the district court lacked proper venue to try the charges against him.[2] We disagree and will affirm his conviction.

### II.

From 1981 through December, 1986, Baxter served as a lieutenant colonel in the United States Army National Guard (Guard). In 1981, he was assigned to the Recruitment and Retention Center, which coordinates recruitment policy for the Guard. Then, in August, 1984, Baxter was promoted to chief of the Recruitment and Retention Center. One month later, Baxter became Contract Officer Representative for the Guard's contracts with the Educational Development Network (EDN).

EDN provided the Guard with educational and employment training materials to help the Guard recruit high school students from throughout the country, and had obtained non-competitive contracts from the Guard worth millions of dollars. Baxter was now in the position to control EDN's future relationship with the Guard, a fact that did not escape the attention of Gerald Kress (Kress), the president and chief executive officer of EDN.

Baxter had an interest separate from the military that was quite dear to him, an interest centered around fast cars. Baxter owns several race cars and admits to having a strong interest in the sport of car racing. In April, 1984, Baxter's family formed and became shareholders of Performance Formula, Inc. (Performance), which conducted Baxter's car racing efforts. Performance was a Virginia corporation with its office at Baxter's home in Reston, Virginia.

Beginning in May, 1984 and continuing through August, 1986, Kress mailed to Baxter's home checks totaling $61,400 payable to Performance. The indictment alleged that in exchange for these payments, Baxter won approval for inflated cost estimates on EDN contracts. The checks were all drawn upon EDN's bank account with the Industrial Valley Bank and Trust Company (IVB) of Jenkintown, Pennsylvania. Baxter deposited these checks into Performance's corporate account at the Sovran Bank (Sovran) in Arlington, Virginia. Each of the five checks that EDN sent to Baxter

---

* Hon. Alfred M. Wolin, District Judge of the United States District Court for the District of New Jersey, sitting by designation.

1. This section, with minor amendments, is now codified at 18 U.S.C.A. § 201(c)(1)(B) (West Supp.1989). *See* Act of Nov. 10, 1986, Pub.L. No. 99–646, § 46(g), 1986 U.S. Code Cong. & Admin.News (100 Stat.) 3603.

2. Baxter also contends that the United States Attorney's Office impermissibly avoided the grand jury process when it conducted an investigation of his wrongdoing. This contention is considered in the opinion issued today in the related case of *United States v. Educational Dev. Network Corp.*, 884 F.2d 737 (3rd Cir.1989). We reject it for the reasons set forth in that opinion.

cleared EDN's account with IVB. Baxter was the only person who had permission to withdraw funds from the Performance account.

## III.

The district court had subject matter jurisdiction in this case under 18 U.S.C.A. § 3231 (West 1985). We have appellate jurisdiction over the judgment of conviction and sentence pursuant to 28 U.S.C.A. § 1291 (West Supp.1989). Since the question of venue at issue here is a matter of law, we exercise plenary review. *See United States v. Passodelis*, 615 F.2d 975, 978 n. 6 (3d Cir.1980) ("[T]he determination as to whether there was sufficient evidence to support a finding [of proper venue in the district court] is a question of law, not of fact.").

## IV.

■ Proper venue in criminal trials is more that just a procedural requirement; it is a safeguard guaranteed twice in the United States Constitution itself. *See United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir.1987); *Passodelis*, 615 F.2d at 976. Article III, section two, clause three of the Constitution states: "The Trial of all Crimes ... shall be held in the State where said Crimes shall have been committed...." U.S. Const. art. III, § 2, cl. 3. In addition, the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law...." U.S. Const. amend. VI.

The Federal Rules of Criminal Procedure also contain a venue provision. Rule 18 states, in part: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." Fed.R. Crim.P. 18. The key to determining whether venue for Baxter's prosecution was

proper in the Eastern District of Pennsylvania therefore hinges upon whether he "committed" the crime there.

In the "continuing offense" venue statute, Congress provided that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C.A. § 3237(a) (West 1985). This statute is applicable by its own language "[e]xcept as otherwise expressly provided by enactment of Congress...." *Id.* Baxter was convicted of violating 18 U.S.C.A. § 201(g). In *United States v. Niederberger*, 580 F.2d 63, 69–70 (3d Cir.), *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978), we held that a public official's illegal receipt of a gratuity in violation of section 201(g) can constitute a continuing offense under section 3237(a).

■ It is not disputed in this appeal that Baxter received the illegal payments in the form of checks at his home in Reston, Virginia. Baxter deposited these checks in the Sovran Bank for collection. Sovran then presented these checks for payment at the IVB branch in Jenkintown, Pennsylvania. Under the Uniform Commercial Code, which is the law in both Pennsylvania and Virginia,[3] Sovran was Baxter's agent for collection of these checks. *See* U.C.C. § 4–201 (1977). Sovran, as Baxter's agent, sent these checks to the Eastern District of Pennsylvania to have them paid. All of the checks were cleared by IVB in its Jenkintown branch.

In *United States v. Johnson*, 337 F.2d 180 (4th Cir.1964), *aff'd on other grounds*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966), the Fourth Circuit was faced with the issue of whether venue was proper in the District of Maryland for the prosecution of a crooked congressman, Thomas F. Johnson, and the two men who bribed him and another federal legislator. Johnson received checks in Washington, D.C. drawn

3. *See* 13 Pa.Cons.Stat.Ann. §§ 1101–9507 (Purdon 1984); Va.Code Ann. §§ 8.1–101—8.9–507

(1965).

on a Maryland bank. The Fourth Circuit held that venue was proper in Maryland, because "the drawee bank, and also the bank in which the checks were deposited were both located in the District of Maryland." 337 F.2d at 194. Under Maryland law, as in both Pennsylvania and Virginia, the depositor's bank acted as the depositor's agent for collection.

Professor Wright, in his treatise on federal practice and procedure, has written:

> [I]f a statute makes it a crime to receive compensation under certain circumstances, and the recipient is given a check, the place of delivery of the check is not the proper venue. Instead it is necessary to look to where the check was paid. Although at one time subtle distinctions were made depending on whether, under the local banking law, the bank became owner of the check, or a mere agent for collection from a drawee bank in some other district, these can now be avoided by regarding the transaction as a continuing offense and thus permitting suit either where the check was deposited or where it was paid.

2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 302, at 199–200 (1982) (footnotes omitted).

We believe Professor Wright correctly states the law as to prosecution in the district where checks are paid and therefore hold that venue was proper in the Eastern District of Pennsylvania.[4] Baxter's receipt of illegal gratuities constituted a continuing offense. His bank, acting as his agent, went to the Eastern District of Pennsylvania to receive payment of the gratuities. Baxter is thus deemed to have received the illegal gratuities in the Eastern District of Pennsylvania. Since the crimes were committed in that district, venue was proper there. The judgment of the district court will be affirmed.

---

**4.** The question of whether Baxter's prosecution could have been brought in Virginia is not before us today, and we express no opinion on it. In addition, we take no position on whether prosecution would be permitted in the district where checks are delivered, if they are deposited and paid in other districts.