### UNITED STATES of America

v.

### Gerald L. KATZOFF

### No. CR.A. 03–69.

United States District Court, E.D. Pennsylvania.

June 3, 2003.

Peter F. Vaira, Vaira & Riley PC, Philadelphia, PA, Thomas P. Puccio, New York, NY, for Gerald L. Katzoff, Defendants.

Joseph G. Poluka, U.S. Attorney's Office, Philadelphia, PA, for USA, Plaintiff.

## MEMORANDUM

BARTLE, District Judge.

Defendant, Gerald Katzoff, moves to dismiss the indictment in which he is charged with making false statements to the Resolution Trust Corporation ("RTC") in violation of 18 U.S.C. § 1014. Defendant asserts that: (1) venue is improper in the Eastern District of Pennsylvania; (2) the allegedly false statements were literally true and thus did not violate § 1014; (3) the indictment was delayed unreasonably; and (4) the indictment contains multiplicitous counts. Alternatively, if the indictment is not dismissed, defendant seeks a bill of particulars.

### I.

The defendant was a personal guarantor on a number of loans obtained from two savings and loan institutions which later failed and came under the ownership of the RTC. The indictment charges that he submitted a false personal financial statement and affidavit to the RTC for the purpose of influencing it in connection with negotiations to resolve his outstanding obligations.

Title 18 U.S.C. § 1014 states in relevant part:

Whoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of the ... Resolution Trust Corporation ... upon any ... commitment, or loan,

or any change or extension of any of the same, by renewal, deferment of action or otherwise, ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

It is undisputed that the personal financial statement signed by defendant was notarized on January 21, 1993 in Ambler, Montgomery County within the Eastern District of Pennsylvania. The statement had originally been prepared for Chemical Bank, not the RTC. Neither party contests the fact that the RTC received the financial statement at its office in Atlanta, Georgia sometime thereafter. However, at the oral argument on the motion to dismiss, the Government conceded that it has no direct proof of the location from which the statement was transmitted to the RTC. It has no direct evidence, for example, that the statement was mailed from this district. At most, the Government will be able to show that receipt by the RTC's Atlanta office was not by hand delivery and that officials at the RTC in Atlanta had correspondence and telephone discussions with defendant related to their negotiations when he was in the Eastern District of Pennsylvania.

## II.

We first turn to defendant's contention that venue is improper in this district. Article III, Section 2, Clause 3 of the Constitution provides that:

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

The Sixth Amendment reads in relevant part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, ....

Thus, criminal venue is an issue of constitutional dimension, not simply a procedural or statutory matter relating to convenience.[1] *See U.S. v. Johnson*, 323 U.S. 273, 276, 65 S.Ct. 249, 89 L.Ed. 236 (1944).

Implementing these Constitutional provisions, Congress has enacted venue requirements for particular crimes. Most pertinent for present purposes is 18 U.S.C. § 3237(a), which reads:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

■ The Government has the burden to establish proper venue by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Perez*, 280 F.3d 318, 330 (3d Cir.2002).

## III.

We face a threshold question whether the pending venue issue may be decided on a motion to dismiss the indictment as the defendant contends or whether as the Gov-

---

**1.** The language in Article III is actually a venue provision since it restricts the location of the trial while the language in the Sixth Amendment is, strictly speaking, a vicinage guarantee since it only limits the place from which the jurors are drawn. This distinction has never been given any weight. *See U.S. v. Passodelis*, 615 F.2d 975, 977 n. 3 (3d Cir. 1980).

ernment asserts we must wait and submit the issue to the jury at trial.

In *United States v. Passodelis*, 615 F.2d 975 (3d Cir.1980), our Court of Appeals explained in a footnote that "the determination as to whether there was sufficient evidence to support a finding that the crimes were committed by Passodelis in the Middle District [of Pennsylvania] is a question of law, not of fact." *Id.* at 978 n. 6. The court reached the issue on review of the record after the defendant had been found guilty of making contributions in excess of the $1,000 limit to a candidate seeking the presidential nomination.

The venue issue was again before the Court of Appeals after a conviction, in *U.S. v. Baxter*, 884 F.2d 734, 736 (3d Cir.1989). Citing *Passodelis*, the court reiterated that "the question of venue at issue here is a matter of law." *Id.*

More recently, the Court of Appeals discussed criminal venue in greater depth in *Perez*, 280 F.3d at 327. The defendant was convicted in the District of New Jersey of conspiracy to distribute and possess with intent to distribute methamphetamine. It was not until the charge conference after the close of the evidence that the defendants requested a venue instruction. The District Court denied the request and did so again after the court charged the jury. The Court of Appeals explained that venue is not always a question of law. Rather, it is a fact question for the jury "where the indictment alleges venue without a facially obvious defect, if (1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction." *Id.*

▆▆▆ The court noted that a defendant may raise a venue objection in a pretrial motion, challenge the evidence on the subject during the Government's case at trial or at the latest move for acquittal at the close of the Government's case on this basis. However, venue does not become an issue for the jury unless there is a genuine issue of material fact related thereto. The defendant, of course, may introduce evidence with respect to venue in his case, but his challenge must be made known at or before the close of the Government's case.

For purposes of the pending motion, it is undisputed that the allegedly false statement was prepared and notarized in the Eastern District of Pennsylvania. To the extent that the Government argues that this is sufficient to establish venue in this district, we have a question of law to be decided by the court. However, insofar as the Government's position rests on material facts which are genuinely in dispute, we will have a fact question for the jury.

## IV.

The Government initially argues that venue exists in this district because the false statement was prepared and notarized here. The critical factor in our analysis is the point when the crime of making a false statement to influence the RTC under 18 U.S.C. § 1014 begins. Under 18 U.S.C. § 3237(a), where an offense begins in one district and is completed in another, a person may be "prosecuted in any district in which such offense was begun, continued, or completed." The defendant argues that a § 1014 crime does not begin until there is a communication to the RTC by mailing, hand delivery, telephone or otherwise while the Government contends that the crime commences when the false statement is prepared and executed. We have found no case in which our Court of Appeals has spoken on this question. However, other circuits have had occasion to grapple with it.

The defendant relies on *Reass v. United States*, 99 F.2d 752 (4th Cir.1938). In that action, the defendant was indicted in the District of West Virginia for making a false statement with the purpose of influencing the Federal Home Loan Bank Board ("FHLB"), located in Pittsburgh, Pennsylvania. The evidence established that the false applications were "prepared, filled out, and signed" in Wheeling, West Virginia and were taken in person by defendant to Pittsburgh where defendant added the corporate seal, signed a certificate of personal knowledge and correctness, and presented the applications to the FHLB. The District Court rejected the motion to dismiss the indictment for improper venue on the ground that it was sufficient that the applications were prepared in West Virginia. The Court of Appeals reversed. It concluded that the entire offense had occurred in Pennsylvania.

Without passing on whether venue would have been proper had the application been mailed from West Virginia, the court declared:

> ... the statute condemns the making of a false statement for the purpose of influencing the bank. The mere assembling of the material and its arrangement in a written composition containing the misrepresentations of fact can have no effect, and it is only when they are communicated to the lending bank that the crime takes place. It follows that the acts performed by the defendant in Wheeling, although preparatory to the commission of the crime, were not part of the crime itself. That took place entirely in Pittsburg [sic] where the writing previously prepared was presented to the bank.

*Id.* at 755 (footnote omitted).

Other cases have upheld venue in the district from which the false statement was mailed. *See United States v. Ruehrup*, 333 F.2d 641, 644 (7th Cir.), *cert. denied* 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964); *United States v. Wuagneux*, 683 F.2d 1343, 1360 (11th Cir.1982), *cert. denied* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). In *Ruehrup*, for example, the defendant had prepared false statements in the Southern District of Illinois where his stenographer who typed the statements mailed them to the Farm Credit Administration in Missouri. The court held that Southern Illinois was a correct place for the trial, noting that "[t]hese events [in Southern Illinois] were the beginning of the offenses charged and the offenses were completed when the statements were received by the bank." *Ruehrup*, 333 F.2d at 643.

There are two decisions on which the Government relies to support its position that preparation and execution of the statement suffice to establish venue. One is *United States v. Greene*, 862 F.2d 1512 (11th Cir.1989). The defendant Greene was charged and convicted of violations of 18 U.S.C. § 1014 in the Middle District of Florida. He challenged venue. According to the evidence, Greene desired to invest in a tax shelter set up by a person named Erber but being without sufficient funds "submitted" a fraudulent loan application to Peoples Bank, Erber's bank in New York. When Peoples Bank rejected the application, Erber hand carried the application to Marine Midland Bank in New York, which accepted it. While Greene prepared the application in Florida, it was conceded he did not mail it to Marine Midland. After the approval of his loan, Greene "signed a promissory note and wrote a letter to Marine Midland directing disbursement of the funds." *Id.* at 1517. The opinion does not tell the reader whether the letter was mailed from Flori-

da. Nor does the opinion indicate how Greene "submitted" the application to Peoples Bank—an event for which he was not indicted.

The Court of Appeals concluded that venue in the Middle District of Florida was appropriate. It explained that "a Jacksonville [Florida] resident who prepares fraudulent documents in Jacksonville and who signs a promissory note with disbursement instructions in Jacksonville cannot escape prosecution in Jacksonville simply because one of his minions has performed the actual transmittal of the documents with New York." *Id.* at 1516.

The other case which the Government cites to support its position is *United States v. Zwego*, 657 F.2d 248 (10th Cir. 1981). There, the defendant was charged with telephoning from Kansas City, Missouri to a bank in Kansas City, Kansas a number of applications for automobile loans containing false statements. The court upheld the location of the trial in the District of Kansas because "the crime of making false statements was completed when the Bank employee transcribed the information telephonically received onto the application form." *Id.* at 251. In dicta, the court commented that venue is also proper "where the false statements were prepared, executed, or made . . . ." *Id.*

The two cases cited by the Government can certainly be read to support its position that the making of a false statement in violation of § 1014 begins when the statement is "prepared, executed, or made." However, in *Zwego*, the language is clearly gratuitous. The *Greene* case is at best opaque. While defendant there submitted the statement from Florida to Peoples Bank in New York, we do not know from the opinion how it was submitted, that is, how it initially came to be in New York. In addition, more than the preparation of the fraudulent document took place in Florida. The defendant executed a promissory note and disbursement instructions there.

In any event, we think *Reass* contains the better reasoning that the offense of making a false statement does not begin until the statement has been imparted to the recipient bank or agency. Mailing from the district, of course, would meet this requirement. *Ruehrup*, 333 F.2d at 644. Under § 1014, it is a crime only if one "makes" a false statement for the purpose of influencing one of the enumerated agencies or institutions. For this purpose, a false statement is not made unless it is communicated by mailing or in some other way. A person who simply prepares and executes it in Montgomery County, Pennsylvania, without doing more in this district, cannot be said to have begun here an offense under § 1014, any more than a person can be said to have commenced a bank robbery in the district where he prepared the note which he later passed to the teller during the hold-up of a bank in a different district.

We hold that the mere preparation and execution of a false statement in this district is insufficient as a matter of law to establish proper venue under the Constitution or § 3237(a) for a violation of § 1014.

## V.

The Government next argues that even if the crime under § 1014 does not begin for venue purposes when the false statement was prepared and executed, it has the requisite evidence to establish by a preponderance of the evidence that defendant mailed the statement from this district. *Perez*, 280 F.3d at 330.

Concededly, as noted above, it has no direct proof of mailing in the Eastern District of Pennsylvania. It has no envelope with a postmark, and no one is prepared to

testify that the defendant was seen actually depositing the statement in a mailbox. Nor will there be evidence from anyone in defendant's employ who knows about defendant's normal or regular office procedure. *See Wuagneux*, 683 F.2d at 1357. On the other hand, the Government will offer proof that the RTC had a series of telephone communications and correspondence with defendant in the district concerning the loan guarantees and that the statement which is the subject of the indictment, while submitted to the RTC in Atlanta, was not hand delivered.

At this point, we do not know enough about the particulars of the Government's evidence to determine whether it might reasonably be inferred that the defendant mailed the statement to the RTC from the Eastern District of Pennsylvania. As noted above, the Government's burden of proof on venue is by only a preponderance of the evidence, not beyond a reasonable doubt. *Perez*, 280 F.3d at 330. Complicating matters, the defendant has suggested that he may offer evidence that during the period in question, he spent an extensive amount of time in Texas. We cannot decide the issue of venue at this juncture and will need to await developments at the trial. If after the presentation of the evidence a genuine issue of material fact exists, it will be a matter for the jury. *Id.* at 327. Otherwise, it will be a question of law for this court.

### VI.

The defendant has raised several additional grounds in support of his motion to dismiss. First, he contends that the alleged false statements were literally true and thus did not violate § 1014. *See Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). Based on the face of the indictment, which is really all we have before us, there is no

way to tell whether the defendant's argument is valid. The motion is premature and will not be ripe until the evidence is adduced at trial.

Nor are we persuaded by the defendant's argument that the indictment should be dismissed because of unreasonable delay and prejudice to defendant. The indictment was handed down within the ten year statute of limitations, albeit only days before it expired. According to defendant, a key defense witness, a former RTC officer, has died in the meantime. Nonetheless, the defendant has not come forth with proof that any delay by the Government "caused substantial prejudice to [his] right[ ] to a fair trial *and* ... the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (emphasis added).

The final arguments that the four counts in the indictment are multiplicitous and that defendant is entitled to a bill of particulars are without merit and need no discussion.

### VII.

In sum, the motion of defendant to dismiss all or part of the indictment will be denied. We will also deny the motion for a bill of particulars.

### *ORDER*

AND NOW, this 3rd day of June, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that: (1) the motion of defendant Gerald L. Katzoff to dismiss the indictment is DENIED; and (2) the motion of defendant for a bill of particulars is DENIED.