UNITED STATES of America,
Plaintiff-Appellee,

v.

Elmer RUEHRUP, Defendant-Appellant.

No. 14542.

United States Court of Appeals
Seventh Circuit.

June 24, 1964.

Rehearing Denied July 27, 1964.

Certiorari Denied Nov. 9, 1964.

See 85 S.Ct. 194.

Emerson Baetz, Alton, Ill., G. Gordon Burroughs, Edwardsville, Ill., for appellant.

**642**

Edward R. Phelps, U. S. Atty., Leon G. Scroggins, Asst. U. S. Atty., Springfield, Ill., Thomas F. Londrigan, Asst. U. S. Atty., Springfield, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Defendant Elmer Ruehrup is appealing from a judgment of conviction and sentence imposed thereunder for making false statements for the purpose of influencing an agency of the Farm Credit Administration, in violation of 18 U.S. C.A. § 1014.[1]

The prosecution was by information, defendant having waived an indictment. The information was in three counts, alleging the making of overstatements on October 20, 1959, April 25, 1960 and December 13, 1960 as to the quantity of soybeans held in the elevators of the Alhambra Grain and Feed Company (company), Alhambra, Illinois.

Defendant entered a plea of not guilty and trial was had by jury in the Southern District of Illinois. The jury verdict found defendant guilty on all three counts. Defendant was sentenced to the custody of the Attorney General for imprisonment for a period of two years on each count, the sentences to run concurrently. The sentence stated that defendant would become eligible for parole upon serving a term of four months. No fine was imposed.

In 1948, defendant became manager of the company, which had for years been a borrower from the St. Louis Bank of Cooperatives (bank) at St. Louis, Missouri, an agency of the Farm Credit Administration. The company, through defendant, periodically filed statements for purposes of credit with the bank showing the quantity of grain on hand.

The company, in connection with its grain storage business, engaged in processing soybeans into soybean oil and soybean meal by the so-called "expeller process." This process squeezed the beans between rollers and was less efficient than the "solvent extraction process," used by some competitors, which applied a chemical to the beans.

The company met the prices of competitors who used the more efficient method. In order not to show losses on its books, defendant did not enter the actual quantity of soybeans processed, rather, he entered the quantity which would have been processed if the more efficient method had been used. This practice resulted in recording a greater quantity of soybeans on the books than were in storage.

In January, 1961, the bank sent inspectors to the company to measure the amount of soybeans in storage. Defendant admitted, prior to such measurement, that there were approximately 100,000 fewer bushels in storage than recorded on the books. This approximation proved to be substantially correct.

The company was adjudicated a bankrupt. On January 10, 1964, defendant was convicted and sentenced.

On appeal, defendant contends that the district court committed reversible error by denying motions for acquittal due to improper venue; permitting a self-incriminatory statement signed by defendant to be admitted into evidence; refusing to expunge a portion of this statement from evidence; and improperly ruling on objections to testimony.

**I.**

Defendant urges that since the alleged false statements and reports were submitted to the St. Louis Bank of Cooperatives in St. Louis, Missouri, venue was solely in the Eastern District of

1. "§ 1014. Loan and credit applications generally; renewals and discounts; crop insurance

"Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the * * * Farm Credit Administration, * * * or any division, officer, or employee thereof, * * * shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Missouri and that the trial court erred in denying his motions for acquittal.

Defendant contends that the offense proscribed in 18 U.S.C.A. § 1014, fn. 1 supra, is the delivery or communication of the false statement, and this occurred only in St. Louis. He relies on U.S. Const. art. III, § 2,[2] U.S.Const. amend. VI[3] and Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

In Travis, "petitioner was charged * * * with the making and filing of false non-Communist affidavits required by § 9(h) of the National Labor Relations Act." Id. 364 U.S. at 632, 81 S.Ct. at 359. Petitioner executed and mailed the alleged false writings in Colorado and they were filed with the National Labor Relations Board in Washington, D. C. Petitioner was indicted and convicted in the United States District Court for the District of Colorado. The Supreme Court reversed the conviction and held that venue lay only in the District of Columbia.

The Supreme Court stated in Travis that: "Section 9(h) of the National Labor Relations Act, with which we are concerned, did not require union officers to file non-Communist affidavits. If it had, the whole process of filing, including the use of the mails, might logically be construed to constitute the offense. But this statutory design is different. It requires that the Board shall make no investigation nor issue any complaint in the matters described in § 9(h) 'unless there is on file with the Board' a non-Communist affidavit of each union

officer. The filings are conditions precedent to a union's use of the Board's procedures. * * * The words of the Act—'unless there is on file with the Board'—suggest to us that the filing must be completed before there is a 'matter within the jurisdiction' of the Board within the meaning of the false statement statute. When § 9(h) provides the criminal penalty, it makes the penal provisions applicable 'to such affidavits,' viz., to those 'on file with the Board.'" Id. 364 U.S. at 635, 636, 81 S.Ct. at 361, 362.

We agree with the Tenth Circuit that Travis is not controlling and is limited to the statute there involved. Imperial Meat Company v. United States, 10 Cir., 316 F.2d 435, 440 (1963).

We conclude, as did the district court, that 18 U.S.C.A. § 3237(a)[4] is controlling.

The following events occurred in Illinois in the instant case. Defendant prepared rough drafts of the statements in issue. A stenographer typed the statements and submitted them to defendant for approval. The stenographer deposited the statements in the mail.

These events were the beginning of the offenses charged and the offenses were completed when the statements were received by the bank. See De Rosier v. United States, 5 Cir., 218 F. 2d 420, 422 (1955), cert. denied, 349 U.S. 921, 75 S.Ct. 660, 99 L.Ed. 1253.

We find no merit in defendant's contention that the wording of the information[5] was so vague that defendant could now be subsequently prosecuted in

2. "* * * *
    "The Trial of all Crimes * * * shall be held in the State where the said crimes shall have been committed * * *."

3. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *."

4. "§ 3237. Offenses begun in one district and completed in another
    "(a) Except as otherwise expressly provided by enactment of Congress, any of-

fense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

5. The information charged that on October 20, 1959, April 25, 1960, and on December 13, 1960, the defendant,
    "in the City of Alhambra, County of Madison, State of Illinois, in the Southern Division of the Southern District of Illinois, and within the jurisdiction of this

the Eastern District of Missouri on charges arising from the same written statements in issue here.

■ We hold that venue was properly laid in the Southern District of Illinois and the trial court's denial of motions for acquittal was not error.

## II.

Defendant asserts that the district court committed prejudicial error in overruling his objection to the admission in evidence of a statement signed by him in the absence of his attorney.

On August 8, 1962, Robert Trout, a Special Agent of the Federal Bureau of Investigation, called at defendant's farm home to question him concerning possible criminal aspects of the soybean shortage.

Trout testified at the trial that, "at the beginning of the interview * * * I explained the nature of my visit to * * * [defendant] and informed him that he was under no obligation to discuss the matter * * * unless he desired to do so and that prior to discussing it, if he wished, he had the right to consult an attorney."

Defendant informed Trout that his attorney was out of town. Trout told him that it was not necessary the attorney be present. Defendant stated that he had made several statements to others and had no objection to discussing the matter.

At the conclusion of their talk, Trout told defendant he desired to reduce the information to a written statement to be signed by defendant. Defendant replied he would sign such a statement.

Trout prepared a statement in the first person and the following morning defendant signed it in the presence of Trout and defendant's wife, who signed as witnesses.

court, * * * did knowingly make a false statement and report and wilfully overvalue property and security, that is, the defendant did file a grain inventory statement * * * by submitting said

Defendant testified as follows concerning his signing the statement:

"The Court: And the very first paragraph [of the signed statement] said this, 'I, Elmer H. Ruehrup, make the following voluntary statement to Special Agent Robert B. Trout, who has identified himself to me as a Special Agent of the Federal Bureau of Investigation, United States Department of Justice. No threats, promises, or duress of any kind have been used to induce me to make this statement. I realize that I have the right to consult an attorney prior to making any statement, and I also realize that any statement made by me may be used against me in a court of law.'

"Now that paragraph was in there, and you read it, is that correct?

"The Witness [Defendant]: Yes, sir.

"The Court: And you signed it after you read it, is that correct?

"The Witness [Defendant]: Yes, sir."

Defendant cites Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) and argues his constitutional rights were violated in that he was denied effective representation of counsel. He asserts that he "occupied the same position as one under arrest," since "[w]ithin eleven days * * * [of the signing of the statement] the government was ready to initiate prosecution, and it is fair to infer that prosecution was in mind when Trout was questioning the defendant and preparing a statement for him to sign."

We find no similarity between Spano and the instant case. In Spano, petitioner had been indicted for first-degree murder. He retained counsel who in-

false statement to the St. Louis Bank of Co-operatives, well knowing the same to be false when made; in violation of Section 1014, Title 18, U.S.Code."

structed him to answer no questions. Petitioner was thereafter subjected to persistent and continuous questioning. He repeatedly requested and was denied an opportunity to consult his attorney. After eight hours of constant questioning he confessed. The Supreme Court reversed petitioner's conviction and stated that "petitioner's will was overborne by official pressure, fatigue and sympathy falsely aroused," id. 360 U.S. at 323, 79 S.Ct. at 1207, and as a result his confession was not voluntary.

█ In the present case, defendant had full knowledge of his right to consult an attorney prior to signing the statement and that the statement could be used against him in court. With this knowledge, he voluntarily signed the statement. No constitutional right of defendant was violated and the district court did not err in admitting the statement in evidence.

### III.

Defendant contends that, assuming the signed statement was admissible, the district court erred in refusing to expunge from such statement recitations of wrongdoing unconnected with the filing of false grain inventory reports.

These recitations concerned nonexistent oil contracts and were, *inter alia*, as follows: "In addition to the inventory shortage as indicated above, there is another shortage of $96,779.55 consisting of nonexistent oil contracts which were shown on the company books as assets. These oil contracts accumulated through the years 1956 to 1960 and were included in the records of the company in order that the company books would show a profit for the years in question even though there were actual losses during those years. * * *"

The trial court refused to expunge these recitations and held them admissible for two purposes: "I'll say that this is being admitted for two purposes: One, in response to a question that he did not know in the inventory what the oil contracts were. And, secondly, that the jury might take this into consideration

for the sole and only purpose of arriving at intent, and not for the purpose of finding this man guilty under the charge on the indictment."

Judge Knoch, speaking for the court in United States v. McCartney, 7 Cir., 264 F.2d 628, 631 (1959), cert. denied, 361 U.S. 845, 80 S.Ct. 98, 4 L.Ed.2d 83, said, "As a general rule, of course, evidence of another offense, wholly independent of the one charged is inadmissible. However, in this case, the conversation was part of the *res gestae*. * * * Evidence even of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances thereof."

The misrepresentation of the soybean inventory and the making of nonexistent oil contracts had the same effect and purpose, in part, *viz.*, increasing the assets on the company's books and enabling the company to show a "paper" profit.

Part of the requisite intent with which defendant was charged (18 U.S.C.A. § 1014, fn. 1 supra) was knowingly making a false statement or willfully overvaluing property. This same intent would be present if false contracts were drawn up by defendant to misrepresent the assets of the company.

Proof that defendant drew up false contracts and had them entered as assets on the company's books would be evidence tending to show his intent to make false statements and overvalue property. The two misrepresentations grew out of the same financial problems.

█ We hold the district court did not err in refusing to expunge the oil contract portions of the statement.

### IV.

Finally, defendant charges prejudicial error in the cross-examination of defendant and comment by the court.

Defendant and the witness who testified prior to him, Betty Volz, bookkeeper for the company, were asked questions on direct examination concerning

the inventory kept by the company. Betty Volz was questioned about the accuracy of the inventory as shown on the company's books and whether she could explain the "great difference as appears purportedly between what the auditor for the Government has worked out here and what you reported on your inventory sheets?"

Defendant, on direct examination, was asked whether the books "were kept accurately insofar as sales and purchases were concerned?" Thus, the issue of the accuracy of the company's books and the inventory as recorded thereon was raised by defendant on direct examination.

On cross-examination, defendant was questioned concerning how the company compiled a balance sheet. He was asked, "You wouldn't know what this figure, future trade oil would indicate?" He answered, "Not as such, no, sir."

In an apparent attempt to discredit this answer, Government counsel confronted defendant with defendant's signed written statement and directed defendant's attention to the portions pertaining to the nonexistent oil contracts.

The district court in overruling an objection said, in part, "I'll say that this is being admitted for two purposes: One, in response to a question that * * * [defendant] did not know in the inventory what the oil contracts were."

Upon further cross-examination, defendant admitted that the item entitled "future trade oil" on the balance sheet represented nonexistent oil contracts.

Defendant urges this cross-examination improperly went beyond matters touched upon in direct examination and that the statement of the district court in overruling defendant's objection was highly prejudicial since it implied that defendant had lied.

█ The extent of cross-examination is within the sound discretion of the trial judge who is in the best position to determine how far it should proceed. United States of America v. Alfred Joseph Keig, Sr., 7 Cir., 334 F.2d 823,

(1964); United States v. Keegan, 7 Cir., 331 F.2d 257 (1964); United States v. Lawinski, 7 Cir., 195 F.2d 1, 7–8 (1952); Garber v. United States, 6 Cir., 145 F.2d 966, 970 (1944).

█ We hold this cross-examination was properly within the matters inquired into upon direct examination and that there was no abuse of discretion by the trial court. We find no prejudice to defendant in the court's comment.

The judgment appealed from is affirmed.

Affirmed.