**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas H. GREENE,**
**Defendant–Appellant.**

**No. 88–3106.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 12, 1989.

Robert P. Smith, Jr., Tallahassee, Fla., for defendant-appellant.

Curtis Fallgatter, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before HILL and JOHNSON, Circuit Judges, and NICHOLS,* Senior Circuit Judge.

JOHNSON, Circuit Judge:

Thomas Greene appeals his conviction after a jury trial on four counts of making false statements to influence a federally insured bank in violation of 18 U.S.C.A. § 1014. We affirm.

## I. FACTS

Greene was convicted on three counts of violating 18 U.S.C.A. § 1014 by misrepresenting his net worth and ability to pay to a Florida bank in order to obtain the favorable settlement of a judgment debt which stemmed from a defaulted loan. Greene was also convicted on a fourth count of making false statements on a loan application to a New York bank in violation of 18 U.S.C.A. § 1014.[1] Greene failed on a motion to have Counts 1–3 dismissed as not within the scope of section 1014. After a prolonged jury trial, he was convicted on all four counts and was sentenced to three concurrent terms of two years on Counts 1–3, and one term of two years on Count 4 to be served consecutively with the sentences imposed for Counts 1–3.

## II. DISCUSSION

A. *Counts 1–3: The Scope of Section 1014*

Greene was indicted under 18 U.S.C.A. § 1014, which states:

> **Loan and credit applications generally; renewals and discounts; crop insurance**

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation ... upon any *application*, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, *or loan*, or any change or extension of any of the same, by renewal, acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

(emphasis added) The indictment charged that Greene "knowingly and willfully did make materially false statements in connection with a request and application to settle an outstanding judgment of $123,-413.58 obtained by Flagship Bank." The judge charged the jury that "[f]alse statements to a federally insured bank during negotiations to settle a judgment can constitute a crime under 18 U.S.C. Section 1014." The issue on appeal is whether section 1014 covers Greene's conduct.

Nearly every case construing section 1014 involves misstatements made in applications to obtain loans. *See, e.g., United States v. Wuagneux*, 683 F.2d 1343, 1360 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The false statements made by Greene occurred well after the loan was applied for, issued, and defaulted. He did not lie to the bank until settlement negotiations had begun on the judgment debt arising from the loan. Some guidance as to whether Greene's conduct came within the proper scope of section 1014 can be found in *Williams v. United States*, 458 U.S. 279, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982), where the Court considered whether writing bad checks as part of a check-kiting scheme violated section 1014. The Court held such conduct was not within the scope of section 1014 because a bad check was not a "false state-

---

* Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Greene does not dispute the facts underlying his convictions (except for the fact of criminal intent as to Count 4).

ment" made to a bank. Significantly, the Court did not limit the reach of section 1014 to loan applications. It spoke in terms of "representations made in connection with conventional loan *or related transactions.*" *Id.* at 288–89, 102 S.Ct. at 3093–94 (emphasis added). The government in this case argues that Greene's request to settle his judgment debt was a "related transaction," or that his participation in the settlement negotiations, including the misrepresentations of his net worth, constituted an "application." [2]

Greene claims that section 1014 by its terms does not reach so far. If Congress had wanted to prohibit all misstatements to banks, it could have done so.[3] Greene also relies on *Williams,* which explains that:

> To obtain a conviction under § 1014, the Government must establish two propositions: it must demonstrate (1) that the defendant made a "false statement or report," or "willfully overvalue[d] any land, property or security," and (2) that he did so "for the purpose of influencing in any way the action of [a described financial institution] upon any application, advance, ... commitment, or loan."

458 U.S. at 284, 102 S.Ct. at 3091. Greene reads this formulation of the elements of a section 1014 offense to preclude his conviction for any misrepresentations except those made on a loan application. Because section 1014 does not clearly prohibit his conduct, Greene argues, any interpretation which would encompass his conduct in effect establishes a new offense.

Greene finds support in the familiar principle that "[t]here are no constructive offenses; and before one can be punished it must be shown that his case is plainly within the statute." *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (mail fraud statute

does not prohibit schemes to defraud people of right to impartial government) (*quoting Fasulo v. United States,* 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443 (1926)). Greene is absolutely correct in stating that a court may not rely wholly on the spirit, rather than the language, of a criminal statute to uphold a conviction. *See United States v. Resnick,* 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127 (1936) (statute prohibiting deviation from exact bushel standard in numerous sizes of hampers not violated when defendant deviated by using a size hamper not expressly listed). Greene relies heavily on *Resnick.* In *Resnick,* the spirit of the Standard Container Act was violated, but its express provisions were not. Greene's fraud easily falls within the spirit of section 1014, but, he claims, his misconduct is not expressly prohibited by the statute.

In denying Greene's motion to dismiss the indictment, the district court held that because intentional misstatements made in applying for a loan are prohibited by section 1014, it would be illogical to find that intentional misstatements made in the course of settling a defaulted loan reduced to judgment would not be covered. The court concluded that the settlement negotiations must be "related transactions" under *Williams.* The case law supports this conclusion. In *United States v. Gardner,* 681 F.2d 733 (11th Cir.1982) (per curiam), this Court held that section 1014 may be violated even when the false statements are made *after* the loan has issued. The defendant in *Gardner* took out a loan. When he defaulted on the loan, the bank filed suit. At that point, he induced the bank "to defer the civil action by assigning to the bank his interest in accounts receivable based on fictitious invoices." *Id.* at 733. The Court found these misrepresentations to be within the scope of section 1014. Although the bank in *Gardner* had not yet

**2.** Section 1014 is written in the disjunctive. It prohibits misstatements in an "application ... or loan" (emphasis added), not merely an application *for* a loan.

**3.** Greene points to 18 U.S.C.A. § 1001 which was recodified at the same time as section 1014. Section 1001 clearly prohibits *all* intentional misstatements to federal agencies. Section 1014 is narrower, and Greene claims that that differ-

ence in drafting indicates that section 1014 is not the catchall statute the government wants it to be. The government agrees that section 1014 is narrower and probably does not reach *all* misstatements made to a bank. However, it argues that when the judgment debt arises from a defaulted loan, misstatements made in settlement negotiations are related transactions.

reduced the defaulted loan to judgment, the case is quite similar to the one presently before the Court. There is no logical basis for a distinction between making misstatements to a bank to delay litigation and making misstatements to obtain a favorable settlement after judgment.[4] *See United States v. Baity,* 489 F.2d 256, 257 (5th Cir.1973) (false documents submitted after loan approval fell within section 1014); *accord United States v. Kindig,* 854 F.2d 703, 706 (5th Cir.1988).

Section 1014 prohibits fraud perpetrated in credit transactions with federally insured banks. Greene's settlement negotiations arose from loan transactions with a federally insured bank and were therefore part of a credit transaction within the purview of section 1014. Consequently, we affirm the district court's denial of Greene's motion to dismiss and affirm his conviction on the first three counts of the indictment.

### B.   *Count 4:  Venue*

Count 4 was also brought under 18 U.S.C.A. § 1014, but alleged a different transaction. Greene wanted to invest in a tax shelter being set up by a certain Mr. Erber. Greene, however, lacked sufficient funds to participate. In order to raise those funds, Greene submitted a fraudulent loan application to Erber's bank in New York, Peoples Bank. Peoples Bank wisely rejected Greene's application, and Erber took the application to another New York bank, Marine Midland, which accepted it.

Greene argues that venue was improper in the Middle District of Florida. Venue is proper in section 1014 cases "in the district where the false statement is prepared and mailed, or where the statement is received." *Wuagneux,* 683 F.2d at 1356. Greene admits venue would be proper in New York, where Erber received the false statement. Greene argues that venue was improper in Florida because, although he prepared the loan application in the Middle District of Florida, he never mailed the loan application to Marine Midland.[5] This Court in *Wuagneux* sidestepped the issue of whether mailing was a necessary prerequisite to proper venue in a district where fraudulent documents were prepared. *Id.* at 1357 (avoiding question of whether "preparation and execution alone would be insufficient" by finding sufficient evidence of mailing). In the present case, we must confront the mailing issue directly, because it is undisputed that Greene did not mail the application to Marine Midland Bank.

The reasoning of the Court in *Wuagneux* indicates that venue is proper in Florida even if Greene did not mail the application directly to Marine Midland. The Court held that section 1014 cases should be governed by the same "general rule of venue" as cases brought under 18 U.S.C.A. § 1001.[6] This Court recently held that section 1001 cases are governed by the general venue statute, 18 U.S.C.A. § 3237(a). *United States v. Hernando–Ospina,* 798 F.2d 1570, 1577 (11th Cir.1986). That statute provides that "[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another ... [may be] prosecuted in any

---

4. This reasoning makes the nature of the debt underlying the judgment an essential element of the case. For example, if Greene had hit the bank with his truck, lost a damage suit, and then lied to get a better settlement, section 1014 would not be implicated. Lying to a bank during settlement negotiations on a judgment debt is only a federal crime when a loan underlies the judgment.

   Greene argues that the indictment is fatally defective for alleging only a judgment debt and failing to allege a "judgment debt arising from a defaulted loan." We find the indictment sufficiently definite and clear, certainly providing Greene with "adequate notice of the charges against him." *United States v. Stefan,* 784 F.2d

1093, 1102 (11th Cir.1986) (indictment found adequate in spite of failure to specifically allege essential element of willfulness in prosecution under 18 U.S.C.A. § 1001).

5. Erber transmitted it by hand from Peoples Bank to Marine Midland.

6. 18 U.S.C.A. § 1001 provides in pertinent part:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.

district in which such offense was begun, continued, or completed." 18 U.S.C.A. § 3237(a).

The evidence showed that Greene's offense was begun in the Middle District of Florida, where he completed the false application and where he communicated with Erber. Section 1014 does not require the use of the mails, as do many federal criminal statutes. Greene's conduct in Florida clearly establishes venue there under 18 U.S.C.A. § 3237(a). A Jacksonville resident who prepares fraudulent documents in Jacksonville and who signs a promissory note with disbursement instructions in Jacksonville cannot escape prosecution in Jacksonville simply because one of his minions has performed the actual transmittal of the documents within New York. Consequently, we hold that venue was proper in the Middle District of Florida.

C. *Count 4: Sufficiency of Evidence*

■ Greene claims that the government failed to prove that he willfully and with knowledge submitted a fraudulent loan application to Marine Midland Bank. In reviewing Greene's claim, "we must view all the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and all reasonable inferences from the evidence must be drawn in favor of the jury's verdict." *Hernando–Ospina,* 798 F.2d at 1577–78. He argues that the proof showed that he submitted an application to Peoples Bank.[7] Erber submitted Greene's application to Marine Midland. Greene argues that there was no evidence that he directed Erber to make the second application.

The jury had before it Erber's testimony, which was somewhat equivocal but was sufficient to establish Greene's intent to defraud Marine Midland. The testimony of Erber was as follows:

BY MR. FALLGATTER:

Q. Did you have discussion with Mr. Tommy Greene, notifying him that the Marine Midland Bank would be processing the loan application that had originally gone to the Peoples National Bank?

A. I don't remember correctly if it was Tommy or Mr. Ray Greene, but one of them was notified.

Q. Do you recall testifying in the grand jury about that particular question?

A. No.

Q. Let me show you Page 39 of your grand jury testimony. (Mr. Fallgatter tendering document to the witness.) At Lines 7 through 17 or 20.

A. (Witness perusing document.) That is regarding Marine Midland.

Q. Yes, sir.

A. Yes.

Q. And at Line 12, you were asked: "Did you have any direct discussions with Mr. Greene about Marine Midland Bank?"

Answer: "I'm sure I had some discussion with him, notifying him that would be the bank that was going to discount the notes."

Is that true testimony?

A. Yes, but—

. . . . .

Q. Is that accurate testimony, sir?

A. I am, I might have missed something. What was the question before regarding the transfer to Marine—to M & T Bank, not Marine.

Q. I'm sorry, no, I'm asking about conversations that you had with Mr. Tommy Greene—

A. Regarding—

Q. —reporting to him that the application that had originally been taken to Peoples was being sent over to Marine Midland.

A. Yes, okay.

Q. And did you have such discussions with him?

A. I'm sure, as I said here in the testimony. I'm sorry, I was thinking about from Marine to M & T.

7. For an unexplained reason Greene was not charged with a section 1014 offense against Peo- ples Bank.

Q. All right. For the record, when you were asked that question in the grand jury, were you talking about Tommy Greene or C. Ray Greene? And if you need to look back at Page 38, Line 8, the immediately preceding page.

A. (Witness perusing document.) Again, as I said before, I am sure there was some conversation with Mr. Tommy Greene, but most of my conversations were with Ray Greene.

Q. Right. But just for the record, now, when you were answering—

A. I said to the grand jury, I said there were some conversations, some discussion. I assume there were some discussions with Tom Greene.

The jury also had before it the fact that Erber reported the approval of the application to Greene and that Greene signed a promissory note and wrote a letter to Marine Midland directing disbursement of the funds. The jury is the arbiter of the credibility of witnesses. *Novatel Comm., Inc. v. Cellular Tele. Supply, Inc.*, 856 F.2d 151, 157 (11th Cir.1988). We hold that the jury could have reasonably found that Greene knowingly and willfully ratified Erber's submission of the application.

We find that sufficient evidence was before the jury to support Greene's conviction. In *United States v. Lentz*, 524 F.2d 69, 71 (5th Cir.1975), we held:

> In our view, it is sufficient to establish that the false statement was made for the purpose of influencing the action of a covered institution, if the proof shows that the defendant received notice sufficient to create a reasonable expectation that the statement would reach an institution of the type included in the statute. The proof need not show that it was presented directly to a covered institution.

In *Lentz*, the defendant executed false sales contracts which he knew would be discounted through a dealer who would present them to "a bank." This Court held that the defendant need not have directly presented the false contracts to the bank, nor did he need to possess actual knowledge that the bank was insured by the FDIC. Greene argues that the defendant in *Lentz* meant to defraud any available bank, while Greene meant to defraud only Peoples Bank. Greene claims Erber acted on his own in transmitting the application to Midland Marine Bank. The jury could have found from the evidence before it that Greene intended to defraud Marine Midland in addition to Peoples Bank. *See Hernando-Ospina*, 798 F.2d at 1578.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the convictions on all four counts.