**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio M. ANGOTTI, Defendant–
Appellant.**

**No. 94–50216.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1995.

Decided Jan. 28, 1997.

---

William J. Genego, Law Offices of William J. Genego, Santa Monica, California, for defendant-appellant.

David F. Taylor, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before BROWNING, SCHROEDER and NORRIS, Circuit Judges.

## OPINION

SCHROEDER, Circuit Judge:

### I. BACKGROUND

Antonio M. Angotti was convicted on six counts arising out of his fraudulent conduct in obtaining a loan: four of making false statements to a federally-insured financial institution, one of money laundering, and one of conspiracy to commit the substantive offenses.[1] He appeals his convictions on the

---

1. The false statements were in violation of 18 U.S.C. § 1014. The money laundering was in

ground that venue in the Central District of California was improper, and we deal with the venue issues in this opinion. He also challenges a number of evidentiary rulings made at trial, which we address and affirm in a companion memorandum disposition pursuant to Ninth Circuit Rule 36–3. We here hold that venue was proper in the Central District for all counts and we also affirm.

Angotti was prosecuted primarily because he filed false documents to obtain a $480,000 loan from Western Federal Savings and Loan Association to buy a condominium unit in northern California. Unbeknownst to Western Federal, the condominium was part of a financially troubled real estate project developed by Angotti and his father. Angotti made just one payment on the loan and then defaulted. Western Federal is a federally insured savings and loan headquartered in Orange County, in the Central District of California. In accordance with Western Federal's usual policy, Orange County headquarters made the final decision approving Angotti's loan.

Angotti made all of his false statements to Western Federal through an innocent middle agent, Guarantee Mortgage, whom Angotti hired to help him obtain the loan. Guarantee Mortgage is located in the Northern District of California. Angotti submitted to Guarantee Mortgage a draft loan application that contained false statements. Guarantee Mortgage then unwittingly reiterated the false information in a loan package that it sent to Western Federal's Redwood Shores branch office, also in the Northern District of California. The branch office conditionally approved the loan and then sent the application to Western Federal's head office for the final decision.

After reviewing the application, Western Federal informed Guarantee Mortgage that Angotti would have to provide a "verification of deposit" to confirm the existence of some of his assets. Angotti asked Raymond Arthun, who was in the Central District, to prepare the verification of deposit. Arthun faxed the verification to Guarantee Mortgage, which sent it on to Western Federal's Redwood Shores office, which then directed it to Western Federal's head office in the Central District.

Two of Angotti's four false statement convictions concern statements in the original loan application package. Another is for misrepresentations in the Arthun verification of deposit. The remaining false statement conviction is for the false representation in a letter from Angotti found in a loan file at Western Federal's head office in Orange County. The letter stated that the down payment for Angotti's condominium would be a gift from Eugene Di Basilio, when in fact Di Basilio gave Angotti a twenty-four hour loan for the down payment, not a gift.

Additionally, Angotti was convicted of one count of money laundering for depositing $20,000 of the loan proceeds in a bank in the Northern District, and of one count of conspiracy to commit all of the underlying false statement and money laundering charges. The district court sentenced Angotti to concurrent 41 month terms of incarceration.

## II. VENUE

On appeal, Angotti argues that venue did not lie in the Central District of California for any of the six counts on which he was convicted. "The existence of venue is a question of law [that] we review *de novo.*" *United States v. Childs*, 5 F.3d 1328, 1331 (9th Cir.1993). The prosecution bears the burden of proving the requisite connection to a district by a preponderance of the evidence. *Id.* at 1332. "When a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir.1994).

Our venue law grows out of important concerns that a criminal jury trial be held near the place where the crime was committed and where prosecution can conveniently proceed. "In criminal cases venue involves important considerations of policy, with deep historical roots, that are now expressed in a complicated interplay of constitutional provisions, statutes and rules." Charles A. Wright, Law of Federal Courts § 43, at 271 (5th ed. 1994). The Supreme Court has, at

violation of 18 U.S.C. § 1957. The conspiracy was in violation of 18 U.S.C. § 371.

various times, expounded on the importance of prosecuting cases near the criminal defendant's home. *See, e.g., United States v. Cores,* 356 U.S. 405, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958); *Hyde v. Shine,* 199 U.S. 62, 25 S.Ct. 760, 50 L.Ed. 90 (1905). On other occasions, the Court has stressed the importance of a trial at the locus of the crime. *See, e.g., Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); *Johnston v. United States,* 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956).

The Constitution, which protects venue rights in Article III, § 2, and the Sixth Amendment, states that a defendant must be tried in both the state and the district where the crime was committed. The criminal rules and code spell out that requirement, along with the need to consider the convenience of the defendant and the court:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

Fed.R.Crim.P. 18; 18 U.S.C. § 3232.

Determining where an offense was committed, however, has often been a sticky question. *See* 2 Charles Alan Wright, Federal Practice and Procedure § 302; Armistead M. Dobie, *Venue in Criminal Cases in the United States District Court,* 12 Va.L.Rev. 287 (1926). Many offenses, like complex conspiracies or transporting contraband, may continue through multiple venues. Congress has eased the burden of answering this question by providing that continuing offenses may be prosecuted where they are begun, continued, or completed:

> Except as otherwise expressly provided by an enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a). A key question in this case is whether Angotti's offenses should be treated as continuing offenses that could have been prosecuted in either the Northern District or the Central District of California, or whether, as Angotti contends, venue was proper only in the Northern District.

## A. The False Statement Charges

Angotti was convicted in the Central District of California of four counts of violating 18 U.S.C. § 1014, which punishes anyone who "knowingly makes any false statement ... for the purpose of influencing ... the action" of a federally insured institution. This statute does not indicate a method for determining the location of the crime for the purpose of establishing venue. Therefore, the location "must be determined from the nature of the crime alleged and location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946).

■ Angotti was charged with making false statements for the purpose of influencing the actions of bank officials, who in this case were located in the Central District of California. The statements were actually communicated to those officials; indeed the officials acted upon the statements and approved Angotti's loan. We conclude that venue was therefore proper in the Central District, where the communication reached the audience whom it was intended to influence, even though some of the criminal conduct occurred in the Northern District, where the statements were submitted.

■ Our conclusion is consistent with the decision of another circuit that has considered materially similar facts and held that the crime of making a false statement is a continuing offense that may be prosecuted in the district where the false statement is ultimately received for final decisionmaking. *United States v. Candella,* 487 F.2d 1223 (2d Cir.1973) (analyzing 18 U.S.C. § 1001, which prohibits making false statements to any United States agency). In *Candella,* the Second Circuit explained that "[t]he statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival [at the place] where the

decision was reached to make the funds available." 487 F.2d at 1228. *Candella* applied the provisions of 18 U.S.C. § 3237(a), which provides that continuing offenses may be prosecuted where the crime "was begun, continued, or completed." The Tenth, Eleventh and Seventh Circuits have all treated § 1014 as a continuing offense. *See United States v. Greene,* 862 F.2d 1512, 1515–16 (11th Cir.1989); *United States v. Zwego,* 657 F.2d 248, 251 (10th Cir.1981); *United States v. Ruehrup,* 333 F.2d 641, 643 (7th Cir.1964).

■ Angotti, however, contends that proper venue could only lie in the Northern District of California, where the statements were first lodged. Angotti does not argue that prosecution in the Central District posed any hardship on him, or otherwise fettered the proper administration of his trial. Rather, Angotti relies on the so-called "key verb" test that this court applied in *United States v. Corona,* 34 F.3d 876, 879 (9th Cir.1994). That test directs the court to make venue determinations by looking to the "key verbs in the statute defining the criminal offense to find the scope of relevant conduct." *Id.* at 879 (citation omitted).

Angotti points out, correctly, that the key verb in the crime of making false statements is "make." *See* 18 U.S.C. § 1014. Angotti then urges that all of the false statements were "made" in the Northern District because that is where they were submitted to Western Federal.

We reject Angotti's argument, for it erroneously assumes that a key verb can describe conduct occurring in only one venue. Our conclusion that venue lies in the Central District is fully consistent with our use of the key verb test in *Corona.* In *Corona* we held, quite logically, that the crime of distribution of narcotics is committed in the district where the narcotics are distributed. *Id.* at 880. Deciding where a false statement is "made," however, requires some analysis of where the statement came from and where it went. We agree with the decision of the Second Circuit in *Candella* that the act of making a communication continues until the communication is received by the person or persons whom it is intended to affect or influence. *See also In re Palliser,* 136 U.S.

257, 267, 10 S.Ct. 1034, 1037, 34 L.Ed. 514 (1890) (speculating that offense of offering money with intent to influence a federal official might not be complete "until the offer or tender was known to the postmaster and might have influenced his mind," but concluding with "no doubt at all" that "the offence continued to be committed when the letter reached the postmaster" whom it was intended to influence).

The dissent incorrectly contends that the subjective intent of the defendant is the controlling factor, and attempts to distinguish *Candella* on the ground that Candella knew where the information would ultimately be received, whereas Angotti, at least on this record, did not. The defendant's subjective knowledge, however, does not necessarily determine who the real intended recipient of his statement was. Angotti's statement was made for the purpose of influencing the bank official who had the power to approve his loan. It is irrelevant whether Angotti subjectively knew the identity or location of that official; that official is nonetheless the person to whom Angotti's statements were directed. His act of "making" the false statements continued until the statements were received by the person whom they were ultimately intended to influence.

There is no question that a crime was committed once Angotti's statements reached the bank office in the Northern District; the statements did not have to reach their intended destination in order to constitute a crime. *United States v. Smith,* 740 F.2d 734, 736–37 (9th Cir.1984); *Candella,* 487 F.2d at 1228. But the documents did reach the Central District. As the Second Circuit pointed out in *Candella,* even though a crime may have been completed earlier, "it does not follow that the crime then terminated, and that what transpired in [the district where officials acted upon the false statement] was irrelevant for venue purposes." *Id.*

The dissent correctly observes that a result of this analysis is that venue will often be possible in districts with which the defendant had no personal connection, and which may occasionally be distant from where the defendant originated the actions constituting the offense. As a distinguished observer has

pointed out, however, in such cases "the remedy is not to narrow criminal venue, but to permit easy transfer." Wright, Federal Courts, *supra*, § 43, at 275. Indeed Fed. R.Crim.P. 21(b) permits transfer, on defendant's motion, to *any* district if it is in the interests of convenience. *See* Wright, Federal Courts, *supra*, § 44, at 277 (describing 1966 amendment of rule to give courts "ample power in every case to provide for trial in the most convenient forum if requested to do so by the defendant"). Angotti has never claimed trial in the Central District was inconvenient.

Our holding in this case is also supported by established caselaw relying on banking law and practice to determine the place of criminal conduct involving financial transactions. Thus when a bribe was received in the form of a check, the Supreme Court early on recognized that venue was proper not only where the defendant received the check, but also where he received the funds it represented—*i.e.*, where the check was paid. *See Burton v. United States*, 196 U.S. 283, 303–04, 25 S.Ct. 243, 248–49, 49 L.Ed. 482 (1905) (concluding under then-applicable banking law that check was paid, and hence venue was proper, where check was deposited and credited to defendant's account, not where it was finally paid by drawee bank); *see also* Wright, Federal Practice, *supra*, § 302, at 199–200 & nn. 11–13. Cases under modern banking law, consistent with our decision today, treat such a transaction as a continuing offense and permit prosecution "either where the check was deposited or where it was paid" by the drawee bank. Wright, Federal Practice, *supra*, § 302, at 200 & n. 13 (citing *United States v. Johnson*, 337 F.2d 180, 194 (4th Cir.1964), *aff'd*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966)); *see also United States v. Baxter*, 884 F.2d 734, 737 (3d Cir. 1989).

Moreover, in applying the key verb test in *Corona*, we did not state that verbs must be considered to the exclusion of all other factors. Other circuits have rejected the view that verbs are the sole consideration in determining venue. *See, e.g., United States v. Newsom*, 9 F.3d 337, 339 (4th Cir.1993) ("the verbs examination method is not exclusive");

*United States v. Beddow*, 957 F.2d 1330, 1335 (6th Cir.1992) (employing "substantial contacts" test which takes into account the locus of the effects of defendant's conduct and the suitability of each district for accurate fact-finding); *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188–89 (2d Cir. 1989) (same). Today, we need not decide whether focus on key verbs should be the exclusive measure of venue, since exclusive reliance on key verbs would not alter our holding.

In three of the false statement charges Angotti prepared false documents that were transmitted first to the branch office in the Northern District and then to the head office in the Central District. We hold that venue is proper in either the Northern or Central District and thus affirm the convictions in the Central District.

■ Affirmance of venue for the remaining false statement count, relating to the Arthun verification of deposit, is even more compellingly required. At Angotti's direction, Arthun both prepared and transmitted the false statement in the Central District, and it was acted upon in the Central District. Because Arthun transmitted the communication from the Central District to the Northern District, prosecution in the Northern District would also have been appropriate, but was not required. As the Tenth Circuit explained in *Zwego*, venue for a § 1014 prosecution is proper where "the false statements were prepared, executed, or made...." 657 F.2d at 251; *accord Greene*, 862 F.2d at 1515–16; *Ruehrup*, 333 F.2d at 643; *see also United States v. Marchant*, 774 F.2d 888, 891 (8th Cir.1985) (venue for tax evasion proper where accountant prepared false return, even though taxpayer signed and filed return elsewhere).

### B. Money Laundering

■ The money laundering charge was predicated on Angotti's deposit of funds obtained from the Central District, where the loan was approved. Nevertheless, Angotti contends that proper venue lay only in the Northern District because Angotti deposited the funds there. Doubtless venue could have been laid in the Northern District, but not to

the exclusion of any other possible district. The money laundering began in the district from which the funds were obtained and, accordingly, venue was proper there as well. *See* 18 U.S.C. § 3237(a). In so holding, we follow the lead of the Sixth Circuit, which held in *United States v. Beddow*, 957 F.2d 1330 (6th Cir.1992), that money laundering is a continuing offense and that venue may lie in the district where the illegal money was obtained. *Id.* at 1335–36.

### C. Conspiracy

■ Angotti was additionally convicted of conspiring, in violation of 18 U.S.C. § 371, to commit the underlying substantive offenses. "Venue for a conspiracy charge is appropriate in any district where an overt act committed in the course of the conspiracy occurred. It is not necessary that [the defendant] himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did." *United States v. Corona*, 34 F.3d 876, 879 (9th Cir.1994) (citation and internal quotation marks omitted); *United States v. Meyers*, 847 F.2d 1408, 1411 (9th Cir.1988).

The government argues correctly that venue for the conspiracy charge properly lay in the Central District because acts in furtherance of the conspiracy were committed there. Specifically, the government points to Arthun, who created the false verification of deposit in the Central District and faxed it from there to Guarantee Mortgage in the Northern District. The government also points to other acts by coconspirators which, it contends, confer venue in the Central District. Because we hold that venue properly lay in the Central District where Arthun created the verification of deposit, we need not address the government's remaining arguments.

■ Angotti challenges the government's reliance on Arthun's acts on three separate grounds. First, Angotti argues that the evidence at trial was insufficient to establish that Arthun was a member of the conspiracy because "[t]here was no showing that Arthun even knew what the object of the scheme was, or that he stood to benefit by its achievement." The evidence, however,

showed that Arthun prepared the false verification of deposit at the request of Angotti, knowing that statements in the document were false and that the document was being prepared to help Angotti qualify for a loan. This evidence is sufficient to show that Arthun was a coconspirator.

■ Second, Angotti argues that Arthun's acts cannot place venue in the Central District because Arthun was not himself indicted or even described in Angotti's indictment, and therefore the government's reliance on Arthun's acts prejudiced the defense. Before trial, Angotti moved to dismiss the indictment for lack of venue, arguing that venue for the conspiracy count did not lie in the Central District because the indictment contained no allegations that any acts in furtherance of the alleged conspiracy took place there. The government responded that the indictment alleged that an unnamed coconspirator had "provide[d]" or "submit[ted]" a false verification of deposit to Western Federal, and that the evidence at trial would show that Raymond Arthun had committed this act in the Central District. Angotti was fully apprised of the factual allegations supporting venue in the Central District. Thus, there was no possibility for prejudicial surprise. *See United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir.1992) (per curiam) (defendant was not prejudiced by variance between facts alleged in indictment and facts proven at trial when defendant was "advised well before trial" of what government would attempt to prove); *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir.1963).

Third, Angotti argues that venue could not lie where Arthun prepared the verification of deposit because that act was not foreseeable to Angotti. However, the authority he cites does not require that the defendant foresee where the overt act will occur. *See United States v. Tannenbaum*, 934 F.2d 8, 12–13 (2d Cir.1991).

Because the preparation of the verification of deposit constituted an overt act by a coconspirator in furtherance of the conspiracy, venue was proper in the Central District for

the conspiracy charge, as well as the false statement and money laundering charges.

AFFIRMED.

WILLIAM A. NORRIS, Circuit Judge, concurring in part, dissenting in part:

Appellant Antonio Angotti was convicted of violating 18 U.S.C. § 1014 for filing false statements in a loan application he submitted to Western Federal Bank in the Northern District of California. Section 1014 makes it a crime to "knowingly make[ ] any false statement . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are [federally] insured . . . ." 18 U.S.C. § 1014. A violation of § 1014 is "a crime of subjective intent." *United States v. Kennedy*, 564 F.2d 1329, 1341 (9th Cir.1977) (defendant violated § 1014 even though bank officer was a party to the fraud and thus had decided to authorize the loan in advance of receiving the false statement); *see also United States v. Phillips*, 606 F.2d 884, 886 (9th Cir.1979). The jury found that when Angotti filed the loan application in the Northern District of California, he did it with the intent of influencing Western Federal. At that point, the § 1014 crime was "committed."

The Sixth Amendment guarantees an accused the right to be tried in the district wherein the alleged crime was "committed." [1] U.S. Const. amend. VI. In Angotti's case, that district was the Northern District of California.

The majority holds that venue was proper in the Central District of California—where Angotti was tried—because Western Federal sent Angotti's loan application to that district for approval. I dissent because this holding has no support in the Sixth Amendment, in case law or in logic. The subjective intent crime of which Angotti was convicted was committed when he submitted the loan application to Western Federal in the Northern District. What Western Federal did or did not do with the application thereafter is irrelevant.

*The Loan Application Counts.* The majority accepts that the crime was committed when the loan application was submitted to Western Federal in the Northern District. Maj. op. at 543 ("[t]here is no question that a crime was committed once Angotti's statements reached the bank office in the Northern District"). The majority holds, however, that the crime was also committed in the Central District. I am at a loss to understand how. What *is* painfully clear from the majority's opinion, however, is that under the majority's holding, a person accused of making false statements in a loan application filed with a bank in San Francisco may be prosecuted in Los Angeles, or New York, or Chicago, or any other city where the loan application happens to be sent for approval, regardless whether the applicant has any idea where the bank will send it.

The majority bases its holding upon its characterization of the § 1014 crime as one that "continues until the communication is received by the person or persons whom it is intended to affect or influence." *See* maj. op. at 543. However, the majority cites no authority—Ninth Circuit or otherwise—for the proposition that fraudulent statements intended to influence an "institution the accounts of which are [federally] insured," *see* 18 U.S.C. § 1018, are not received by that institution until they find their way to the individual officers with authority to act upon them. *United States v. Zwego*, 657 F.2d 248 (10th Cir.1981), for example, does not hold that the § 1014 crime "continues" after the bank as an "institution" receives the fraudulent statements. It holds, rather, that "the crime of making false statements for a loan application was completed when the Bank employee transcribed the information telephonically received onto the application form." *Id.* at 251. *Zwego* is thus *not* authority for the majority's holding that the § 1014 crime continued until the false statements found their way to the bank officers with authority to approve Angotti's loan.

1. The Sixth Amendment provides:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . .
   U.S. Const. amend. VI.

*United States v. Greene,* 862 F.2d 1512, 1515–16 (11th Cir.1989), and *United States v. Ruehrup,* 333 F.2d 641, 643 (7th Cir.1964), also have nothing to do with the question whether a § 1014 offense "continues" after the *bank*—as distinguished from individual officers—receives the false statements. The holding of each case is that venue was proper in a district where the defendant performed acts *preliminary* to the bank's receipt of the false statements. *Greene,* 862 F.2d at 1516; *Ruehrup,* 333 F.2d at 643–44.

The principal case the majority relies on is *United States v. Candella,* 487 F.2d 1223 (2nd Cir.1973). There, the defendants delivered the fraudulent documents to an office of the City of New York in Brooklyn for transmittal to City Hall in Manhattan. The Second Circuit held that venue for a § 1001 false statement count was proper in the Southern District (Manhattan) because the City had accepted the documents at the Brooklyn office for transmission to their intended destination—City Hall—as a matter of convenience to the defendants. *Candella,* 487 F.2d at 1227 ("the affidavits and bills of lading in question were *simply accepted* at the City's branch offices ... *for the convenience of the parties* seeking to file papers with the Department of Relocation") (emphasis added). Thus, *Candella* is not authority for the majority's holding that a § 1014 crime continues until the false statements find their way to the individual bank officers with authority to approve the loan. *Candella* says nothing about individual City officials; it merely holds on the particular facts of that case that venue was proper in the Southern District because the defendants intended the documents to be delivered to City Hall. As the Second Circuit put it, "[t]he force propelled ... by the defendants immediately contemplated Manhattan." *Id.* at 1228. Here, there is no evidence that Angotti intended the loan application documents to be delivered to the Central District. In other words, there is no evidence that "[t]he force propelled ... [by Angotti] immediately contemplated [the Central District]." In sum, *Candella* is not authority for the majority's far-reaching holding that venue for the subjective intent crime of violating § 1014 lies in any district where the *bank* chooses to send the loan application for approval.

The bottom line is that Angotti committed the § 1014 subjective intent crime when the federally insured institution—Western Federal—received the false statements. That, of course, happened in the Northern District of California. Where Western Federal chose to send the loan application for approval thereafter is irrelevant for the purpose of deciding Angotti's guilt or innocence and irrelevant for the purpose of determining venue. The crime was committed—it was over—when Angotti delivered the fraudulent documents to Western Federal in the Northern District. It was at this point that Angotti "knowingly ma[de the] false statement[s] ... for the purpose of influencing" that institution. *See* 18 U.S.C. § 1014.

*The Verification of Deposit Count.* Venue in the Central District was also improper on the count relating to the Verification of Deposit ("Verification"). In upholding venue on this count, the majority relies on the fact that Arthun "prepared and transmitted the false statement in the Central District, and [on the fact that the false statement] was acted upon in the Central District." Maj. op. at 544. Arthun's preparation and transmission of the Verification were, however, merely acts that were preparatory to the crime. And the law of this circuit is that " '[a]ctions which are merely preparatory or prior to the crime are not probative in determining venue.' " *Corona,* 34 F.3d 876, 879 (9th Cir.1994) (venue does not lie for the crime of distributing cocaine in the district where the initial arrangements for the drug deal took place) (citation omitted).

The majority ignores *Corona* in its analysis of venue on the Verification count, citing only out-of-circuit cases: *United States v. Greene,* 862 F.2d 1512 (11th Cir.1989); *United States v. Marchant,* 774 F.2d 888 (8th Cir.1985); *United States v. Zwego,* 657 F.2d 248 (10th Cir.1981), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1275, 71 L.Ed.2d 460 (1982); and *United States v. Ruehrup,* 333 F.2d 641 (1964). To the extent these cases are authority for the proposition that actions preparatory to a crime are probative in determining venue, they are in conflict with *Corona.*

*The Conspiracy Count.* Because the preparation by Arthun of the Verification consti-

tuted an overt act by a coconspirator in furtherance of the conspiracy, I agree with the majority that venue in the Central District was proper on this count.

*The Money Laundering Count.* I also agree with the majority that venue for a money laundering count is proper in the district where the underlying crime producing the funds was committed. *See United States v. Beddow,* 957 F.2d 1330, 1336 (6th Cir.1992). I further agree that venue for the money laundering count in this case was proper in the Central District. I do so, however, for a reason different than the one stated by the majority in its opinion. In my view, venue on the money laundering count was proper in the Central District because the conspiracy was a crime which produced the funds involved in the money laundering, and Arthun committed overt acts in furtherance of the conspiracy in the Central District. *See id.* ("[T]he funds involved in both money laundering counts were acquired by selling drugs in the Western District of Michigan.... We conclude that [this] act[ was] sufficient to confer venue under section 3237(a).").

In sum, I would affirm the convictions on the conspiracy and money laundering counts, and reverse the convictions on the false statement counts for improper venue.